COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Benton, Elder, Frank, Humphreys, Clements, Kelsey,
           McClanahan, Haley, Petty and Beales
Argued at Richmond, Virginia


ANSELMO M. ROZARIO
                                                            OPINION BY
v.       Record No. 1433-05-2              JUDGE RANDOLPH A. BEALES
                                                            JULY 24, 2007
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

John L. Squires (Nachman & Squires LLP, on briefs), for appellant.

Josephine F. Whalen, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.

Anselmo M. Rozario (appellant) was convicted by the Chesterfield County Circuit Court,

sitting as the fact finder, of contempt of court under Code § 18.2-456.[1]  He argues that the trial

court should not have considered the results of an Alcosensor test as evidence that he appeared

intoxicated before the trial court.  He also argues that, if the Alcosensor test results were not

admissible, then the evidence was insufficient to convict him of contempt.  A panel of this Court

in a memorandum opinion found the evidence was insufficient to convict appellant of contempt.

Rozario v. Commonwealth, No. 1433-05-2 (Va. Ct. App. Nov. 14, 2006).  The Commonwealth

petitioned for review of this case en banc, which was granted, and we stayed the mandate of the

---

[1] Code § 18.2-456 reads, in pertinent part, "The courts and judges may issue attachments
for contempt, and punish them summarily, only in the cases following:  (1) Misbehavior in the
presence of the court, or so near thereto as to obstruct or interrupt the administration of justice
. . . ."

panel.  After consideration by the full Court and for the reasons stated herein, we now affirm

appellant's conviction.

BACKGROUND

On February 7, 2005, appellant appeared in the General District Court for Chesterfield

County on a traffic offense.  Based on appellant's bloodshot eyes and the odor of alcohol

emanating from him, the general district court judge asked the bailiff to take appellant and have

him undergo an Alcosensor test, which came back with a reading of .107% blood alcohol content

(BAC).  The general district court convicted appellant of contempt pursuant to the provisions of

Code § 18.2-456.

Appellant appealed the conviction to the Chesterfield Circuit Court.  The general district

court, pursuant to Code § 18.2-459,[2] submitted to the circuit court a "certificate of the conviction

and the particular circumstances of the offense" with the record from the general district court.

The certificate read:

> On February 7, 2005 while holding traffic court, I noticed Mr.
> Anselmo Rozario when he appeared in front of me with bloodshot
> eyes and an odor of alcohol about him.  I had my deputy test him
> and the reading was .10.  I then gave him ten days in jail for
> Summary Contempt of Court.

---

[2] Code § 18.2-459 reads:

> Any person sentenced to pay a fine, or to confinement, under
> § 18.2-458, may appeal therefrom to the circuit court of the county
> or city in which the sentence was pronounced . . . .  If such appeal
> be taken, a certificate of the conviction and the particular
> circumstances of the offense, . . . shall forthwith be transmitted by
> the sentencing judge to the clerk of such circuit court, who shall
> immediately deliver the same to the judge thereof.  Such judge
> may hear the case upon the certificate and any legal testimony
> adduced on either side, and make such order therein as may seem
> to him proper.

The Commonwealth introduced this certificate and rested its case. Appellant then introduced the Alcosensor certificate, showing the .107 BAC results of the Alcosensor test.

The circuit court found appellant was in contempt of the general district court on February 7, 2005, and sentenced him to ten days in jail with five days of that sentence suspended.

THE ALCOSENSOR RESULTS

First, appellant asks this Court to find that the trial court inappropriately considered the results of the Alcosensor test. We find the trial court properly considered the Alcosensor results.

Appellant did not object to the admission of the general district court certificate filed pursuant to Code § 18.2-459, which referred to the Alcosensor test. Appellant himself introduced the Alcosensor certificate. In addition, he did not ask that the trial court limit its consideration of the Alcosensor certificate when he introduced the document. Appellant cannot ask for the admission of evidence and then complain when the trial court considers it. See Billips v. Commonwealth, 48 Va. App. 278, 295, 630 S.E.2d 340, 348 (2006) ("It is well settled in Virginia that an appellate court will not 'notice error [that] has been invited by the party seeking to take advantage thereof on appeal.'" (quoting Saunders v. Commonwealth, 211 Va. 399, 400, 177 S.E.2d 637, 638 (1970))).

As appellant introduced the Alcosensor certificate himself (without asking the trial court to limit its consideration of the document) and he did not object to the introduction of the certificate from the general district court, we find the trial court did not err in considering the results of the Alcosensor test.

SUFFICIENCY

Appellant's second Question Presented asks, "*In the absence of evidence of the results of the chemical test for blood alcohol content*, was the information contained in [the court's] Statement of Facts sufficient to support the Circuit Court's finding of guilt?" (Emphasis added.)

The trial court did not err in considering the evidence placed before it, as we discussed *supra*. Therefore, because the results of the chemical test for blood alcohol content were properly admitted and considered by the trial court, appellant's sufficiency argument is moot as the argument's very premise -- that the Alcosensor results were admitted in error -- is untrue. See, e.g., Midkiff v. Commonwealth, 223 Va. 1, 3 n.*, 286 S.E.2d 150, 151 n.* (1982) (explaining that Midkiff's constitutional argument was premised on a finding that good faith was not an element of Code § 18.2-271.1; therefore, as the Court found good faith was an element of that statute, his constitutional argument was moot). We cannot consider moot arguments on appeal, see Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (noting that appellate courts do not consider moot issues), and so we do not address appellant's sufficiency question.

CONCLUSION

We find the trial court did not err in considering the Alcosensor evidence. The remaining question is moot. Therefore, we affirm appellant's conviction for contempt of court.

Affirmed.

Benton, J., with whom Elder and Clements, JJ., join, dissenting.

Anselmo M. Rozario appealed to the circuit court from an order entered by a judge of the general district court convicting him of summary contempt and imposing a sentence of ten days in jail. See Code §§ 18.2-456, 18.2-458, and 18.2-459 (authorizing district court judges to punish contempt and providing that such convictions can be appealed to circuit court). Rozario contends the circuit court judge erred in ruling that (1) the district court judge properly relied upon the results of an Alcosensor testing device and (2) the evidence was sufficient to prove an act of contempt. I would hold the district court judge erred in relying on the Alcosensor test results and the evidence was insufficient to prove contempt beyond a reasonable doubt.

I.

I disagree with the majority opinion's ruling that Rozario invited the error that he now complains of by introducing into evidence in the circuit court the Alcosensor Worksheet, which the district court judge relied upon and put into the district court file when he convicted Rozario of summary contempt.

In the circuit court, the trial judge considered Rozario's appeal at a trial without a jury. In a fairly perfunctory proceeding, the prosecutor offered as evidence a document styled "Statement of Facts," which the circuit court judge apparently accepted as "a certificate of the conviction and the particular circumstances of the offense" pursuant to Code § 18.2-459. The document, which was signed by the district court judge, reads in its entirety as follows:

Statement of Facts

On February 7, 2005[,] while holding traffic court, I noticed Mr. Anselmo Rozario when he appeared in front of me with bloodshot eyes and an odor of alcohol about him. I had my deputy test him and the reading was .10. I then gave him ten days in jail for summary contempt of court.

The prosecutor offered no other evidence in his case-in-chief.

- 5 -

In a motion to strike the evidence for insufficiency, Rozario's attorney argued that nothing in the district court judge's statement indicates Rozario "did anything to obstruct the court," that the alcohol test result was inadmissible because it was obtained from an Alcosensor device, that the district court judge had improperly relied upon the test result, and that the evidence failed to establish Rozario obstructed the administration of justice. When Rozario's attorney made this argument, the circuit court judge had no basis to know from the prosecutor's evidence the source of the district court judge's finding because the district court judge's statement did not disclose the type of "test" he had ordered. The "Statement of Facts" merely recited tersely that the district court judge "had [a] deputy test [Rozario] and the reading was .10."

Specifically noting that "nothing in this certificate . . . says anything [about an Alcosensor]," the circuit court judge observed "it just says . . . he took a test and the reading was .10." The circuit court judge then acknowledged "there's [a document] in the [district court's] file, but that's not in evidence." After Rozario's attorney and the prosecutor disagreed about whether another prosecutor had agreed to stipulate as evidence the "Alcosensor IV Worksheet" that was in the district court's file, the circuit court judge overruled the motion to strike the evidence. Rozario's attorney then offered as evidence a copy of the "Alcosensor IV Worksheet," which was in the district court's file and which the district court judge relied upon in finding "the reading was .10." Rozario's attorney offered no other evidence, rested his case, and renewed his motion to strike.

The prosecutor did not dispute that the district court judge had based his recitation of facts upon the result of an Alcosensor test. Although the district court's file contained the "Alcosensor IV Worksheet," the prosecutor simply opted not to present it as evidence. When Rozario's attorney proffered the Alcosensor Worksheet, he expressly argued it was the basis for

- 6 -

the district court judge's finding and said the judge improperly used it at the summary contempt proceeding. In other words, Rozario argued at trial, as he does now, that the district court judge improperly relied upon an Alcosensor test result to determine Rozario's alcohol level, which was reported in the "Statement of Facts." Before issuing his ruling, the circuit court judge ordered briefing of the issue. Each party filed a memorandum discussing the propriety of the district court judge's use of the Alcosensor test results.

"While the doctrine of invited error remains good law, it simply has no application where, as here, the record shows that a party clearly objected to a specific ruling of the trial court to which error is assigned on appeal . . . ." King v. Commonwealth, 264 Va. 576, 582, 570 S.E.2d 863, 866 (2002) (citing Wright v. Norfolk & W. Ry. Co., 245 Va. 160, 170, 427 S.E.2d 724, 729 (1993)). "In order for a procedural waiver to apply, the record must show that a litigant invited a trial court to commit error, either by failing to object or by agreeing to the ruling." State Farm Mut. Auto. Ins. Co. v. Kendrick, 254 Va. 206, 208 n.2, 491 S.E.2d 286, 287 n.2 (1997). Waiver does not apply, when, as in this case, the circuit court judge was fully aware of the objection. Id. The error to which Rozario objected was the district court judge's reliance upon an Alcosensor testing device to establish the level of alcohol in Rozario's body.

As his sole evidence in the circuit court, the prosecutor relied on the district court judge's "Statement of Facts," presumably as the certificate of conviction prepared in accordance with Code § 18.2-459.[3] The certificate was deficient, however, because it failed to indicate the basis for the test result. By offering the worksheet as an exhibit, Rozario's attorney proffered the

---

[3] When a defendant appeals to the circuit court from a conviction in the general district court of summary contempt, the following procedure applies:

> If such appeal be taken, a certificate of the conviction and the particular circumstances of the offense, together with the recognizance, shall forthwith be transmitted by the sentencing judge to the clerk of such circuit court, who shall immediately

underlying additional facts concerning "the particular circumstances of the offense," which were absent from the district court judge's statement of facts. By noting the document was in the file but not in evidence, the circuit court judge essentially invited Rozario's attorney to put the document in evidence to provide proof to support this claim of error. Merely placing in the record a document that constitutes the basis for the judge's prior ruling does not constitute invited error when the party has made his objection clear. See WJLA-TV v. Levin, 264 Va. 140, 159, 564 S.E.2d 383, 395 (2002) (holding that by "merely proffering or agreeing to an instruction consistent with the trial court's prior ruling," a party does not waive its objection to that ruling). Significantly, the Commonwealth did not assert in its initial brief to this Court or at the oral argument before the panel that Rozario has waived the issue. Although the Commonwealth makes this argument for the first time on this rehearing en banc, the Commonwealth acknowledges that Rozario's attorney argued "before the trial court that the test result should not have been used in the general district court." Indeed, as indicated above, Rozario's attorney made this precise argument, causing the circuit court judge to respond that the worksheet, which the district court judge relied upon, had not been placed in evidence.

The "Statement of Facts" prepared by the district court judge expressly recites that the district court judge "had [his] deputy test [Rozario] and the reading was .10." This establishes that the deputy used a device of some type to test Rozario. Although the general district court's file contained evidence of the type of device used, the prosecutor was content to leave this evidence unproved and to rely upon the circuit judge's statutory authority to "hear the case upon the certificate [of conviction]." Code § 18.2-459. By tacitly asserting the "Statement of Facts"

deliver the same to the judge thereof. Such judge may hear the case upon the certificate and any legal testimony adduced on either side, and make such order therein as may seem to him proper.

Code § 18.2-459.

- 8 -

was the certificate, the prosecutor proceeded without divulging the details of "the particular circumstances of the offense" as relied upon by the district court judge. Id.

If Rozario's attorney had not placed the Alcosensor IV Worksheet into the circuit court's record, this appeal would likely be subject to dismissal for failure to provide this Court with a complete record to decide the claim of error. See LeMond v. McElroy, 239 Va. 515, 521, 391 S.E.2d 309, 312 (1990) (holding that "the responsibility for presenting an adequate appellate record is upon the appellant who seeks reversal of the decision below"); Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part on other grounds, 240 Va. ix, 396 S.E.2d 675 (1990) (holding that "an appellant has the primary responsibility of ensuring that a complete record is furnished to an appellate court so that the errors assigned may be decided properly"). In other words, if Rozario's attorney had not introduced into evidence the Alcosensor IV Worksheet, he would have been precluded from asserting on this appeal that the test result reading of ".10" recited in the district judge's "Statement of Facts" was the reported result of an Alcosensor device. By placing in the record the factual predicate that underlay the district court judge's conclusory finding that the "test . . . reading was .10," Rozario's attorney properly made a record to support the claim that the district court judge relied upon an improper testing device. By offering the worksheet as evidence, Rozario's attorney merely put before the circuit court judge the particulars of the "circumstances of the offense," which were omitted from the "Statement of Facts" prepared by the district court judge and were necessary to establish his claim of error. For these reasons, I would hold Rozario is not procedurally barred from raising his questions presented on appeal.

II.

The circuit court judge ruled that the result of the Alcosensor test was properly

considered by the district court judge and that the recitations in the "Statement of Facts" were

sufficient to prove contempt under Code § 18.2-456.

On brief, Rozario presents the following matters for our consideration in this appeal:

ASSIGNMENT OF ERROR[4]

1. The Circuit Court of Chesterfield County improperly convicted
Appellant of summary contempt of court because the evidence
introduced by the Commonwealth at trial was legally insufficient
to support a conviction pursuant to [Code] § 18.2-456.

QUESTIONS PRESENTED

1. Did Judge Laney, in General District Court, and Judge Gill, in
Circuit Court, improperly rely on the results of a chemical test for
blood alcohol content in finding that Rozario was intoxicated in
Judge Laney's court on February 7, 2005?
2. In the absence of evidence of the results of the chemical test for
blood alcohol content, was the information contained in Judge
Laney's Statement of Facts sufficient to support the Circuit Court's
finding of guilt?

Rozario contends the district court judge and the circuit court judge "improperly relied

upon inadmissible and unreliable results of an Alcosensor test to find appellant guilty of

summary contempt." In the circuit court, Rozario argued in his brief in support of his motion to

strike the evidence that the record contained no "assurances of reliability . . . with the

---

[4] This Court has not always been consistent in differentiating between "questions
presented" and "assignments of error." In numerous appeals, we have recognized and addressed
issues presented by "assignments of error." See, e.g., Black v. Powers, 48 Va. App. 113, 126,
628 S.E.2d 546, 553 (2006); Singson v. Commonwealth, 46 Va. App. 724, 732, 621 S.E.2d 682,
685 (2005); Aldridge v. Commonwealth, 44 Va. App. 618, 637, 606 S.E.2d 539, 548 (2004);
Nowlin v. Commonwealth, 40 Va. App. 327, 333 n.1, 579 S.E.2d 367, 370 n.1 (2003); Riner v.
Commonwealth, 40 Va. App. 440, 452, 579 S.E.2d 671, 677 (2003); Cuffee-Smith v.
Commonwealth, 39 Va. App. 476, 479, 574 S.E.2d 294, 295 (2002); Allen v. Commonwealth, 36
Va. App. 334, 337-38, 549 S.E.2d 652, 653 (2001); Jones v. Commonwealth, 32 Va. App. 30,
37, 526 S.E.2d 281, 284 (2000).

preliminary breath test, and this lack of reliability limits [its] use to pre-trial questions addressing the presence or lack of probable cause for an arrest." On appeal, he also argues "the Commonwealth introduced no evidence that the test given Rozario was reliable" and, thus, the district court judge erred in using the test results to establish the level of alcohol in his body.

In Santen v. Tuthill, 265 Va. 492, 578 S.E.2d 788 (2003), the Supreme Court ruled that the trial judge properly refused to permit proof of the results of "a preliminary breath test . . . using a [police] 'department . . . issued . . . alcosensor.'" Id. at 494, 578 S.E.2d at 789. The Court held that "the numerical result of [the] preliminary breath test was [not] based on an adequate factual foundation," because there was no evidence the device had been regularly calibrated. Id. at 499, 578 S.E.2d at 792.

As in Santen, nothing in evidence provided information about the reliability of the particular device the deputy used to test Rozario or the validity of the results. Importantly, the record does not reflect the device's maintenance, the calibration of the device, its maintenance records, or the accuracy of its results. See id. As a matter of fact, the Alcosensor IV Worksheet contains the following items to be completed: "DATE OF LAST ACCURACY CHECK ____" and "WAS CHECK WITHIN NORMAL LIMITS _____." Neither of these items was completed by the person who administered the device and the designated spaces were empty. Thus, I would hold that the judge improperly relied upon the Alcosensor test results in this case in finding Rozario was in contempt.

III.

Even assuming the district court judge did not err in relying upon the result of the Alcosensor test, I disagree with the majority's contention that Rozario's second question presented depends upon him prevailing under the first question and, therefore, is moot. Rozario fairly raised the question of the sufficiency of the evidence independent of the question

concerning the use of the Alcosensor test results.  Rozario has satisfied the principle that appeals "ought to assign clearly and distinctly all the errors relied on for a reversal of the case, so that the opposite party may know what questions are to be raised in the appellate court."  Orr v. Pennington, 93 Va. 268, 269-70, 24 S.E. 928, 928 (1896); see also Kirby v. Commonwealth, 264 Va. 440, 444-45, 570 S.E.2d 832, 834 (2002) (stating that the purpose of assignments of error is to direct opposing counsel and the court to the issues that the appellant claims as error).  The Commonwealth's understanding of the scope of the second question presented is apparent in its first brief (filed before the panel that considered this case), which addressed the sufficiency issue as an issue independent from that of the Alcosensor test results.

Supposing that the judge erred in relying upon the results of the Alcosensor test, Rozario argues on appeal, as he did in the circuit court, that the evidence was insufficient to prove summary contempt.  Fairly understood, Rozario contends the evidence was insufficient in any event because he expressly argues that "even if [the Alcosensor results] were properly admitted, . . . there is no evidence in the record . . . to sustain a conviction for . . . 'misbehavior in the presence of the Court, or so near thereto as to obstruct or interrupt the administration of justice.'" (quoting Code § 18.2-456(1)).  Responding, the Commonwealth contends the evidence was sufficient to prove contempt because Rozario's appearance caused the district court judge "to stop the proceeding for the administration of an Alcosensor test to confirm the presence of alcohol."

In pertinent part, Code § 18.2-456 provides that "judges may issue attachments for contempt and *punish them summarily, only in the cases following*:  (1) misbehavior in the presence of the Court, or so near thereto as to obstruct or interrupt the administration of justice . . . . "  (Emphasis added.)  Reversing a conviction for summary contempt, the Supreme Court of the United States held that before a judge may invoke "the drastic procedures of the summary

contempt power . . .[,] there must be an actual obstruction of justice." In re McConnell, 370 U.S. 230, 234 (1962); see also Salyer v. Commonwealth, 209 Va. 662, 664, 166 S.E.2d 110, 111 (1969) (holding that the evidence must prove "a clear and present danger to the administration of justice"). Thus, inappropriate or ill-mannered conduct that does not "obstruct or interrupt the administration of justice" is not misbehavior that can be punished. Indeed the Supreme Court has often stated that "[t]rial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." See, e.g., Brown v. United States, 356 U.S. 148, 153 (1958); In re Little, 404 U.S. 553, 555 (1972). Put another way, "[d]isrespectful conduct is not contemptuous." United States v. Lowery, 733 F.2d 441, 446 (7th Cir. 1984).

Furthermore, the record must contain evidence of the conduct that is the basis for the contempt finding.

> The record in such cases must contain more than the bare *conclusion* that the defendant's conduct was insolent, insulting, boisterous or the like. The actual facts upon which the court based its final conclusion must be set out. Such *conclusions* alone will not support a criminal contempt adjudication.

Carter v. Commonwealth, 2 Va. App. 392, 397, 345 S.E.2d 5, 8 (1986) (citation omitted). Because summary contempt "is a proceeding 'to preserve the power and vindicate the dignity of the court,' it is criminal and punitive in character, and the guilt of the alleged contemner must be established beyond a reasonable doubt." Weston v. Commonwealth, 195 Va. 175, 184, 77 S.E.2d 405, 410 (1953) (quoting Local 333B, United Marine Div. of Int'l Longshoremen's Ass'n v. Commonwealth, 193 Va. 773, 779, 71 S.E.2d 159, 163 (1952)).

Although the evidence was sufficient to prove that Rozario consumed alcohol at some time before appearing in the general district court, the evidence must establish an actual obstruction of justice and, thus, must prove more than an odor of alcohol emanating from his

- 13 -

body and bloodshot eyes. This evidence proved nothing about Rozario's conduct, speech, mannerisms, or behavior in the courtroom and was insufficient to prove Rozario obstructed or interrupted justice. Likewise, evidence that Rozario's alcohol level was ".10" was not, when added to the judge's observations, proof of intoxication because it did not prove that Rozario had consumed a sufficient amount of alcohol to affect his speech, disposition, manner, movements, or behavior. See Code § 4.1-100 (defining intoxication, for purposes of the Alcoholic Beverage Control Act, as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, speech, muscular movement, general appearance or behavior"). Indeed, in the circuit court, the prosecutor "concede[d] the evidence in this case would be insufficient to convict [Rozario] of being drunk in public." See, e.g., United States v. Brown, 401 F.3d 588, 597 (4th Cir. 2005) (noting that the court's "research has uncovered, and the Government has cited, no published opinion of the Virginia appellate courts finding probable cause for public intoxication based solely on glassy, bloodshot eyes and the strong smell of alcohol").

The provision of Virginia's contempt statute which was employed in this case is similar to the Pennsylvania statute at issue in Commonwealth ex rel. Falwell v. Di Giacinto, 471 A.2d 533 (Pa. Super. Ct. 1984), where the court reversed a criminal contempt conviction under circumstances analogous to this case. When the defendant appeared in court after having consumed four beers and having a strong smell of alcohol, id. at 534-35, the trial judge convicted him of summary contempt for "'misbehavior . . . in the presence of the court, thereby obstructing the administration of justice,'" id. at 536 (quoting 42 Pa. Cons. Stat. § 4131, renumbered to 42 Pa. Cons. Stat. § 4132). Reversing the conviction, the appeals court held as follows:

> [M]erely being under some influence of liquor will not by itself
> constitute contempt. The drunkenness must be such that it
> obstructs the administration of justice, which means that it must
> interfere with or disrupt the orderly process of the court. . . . The

- 14 -

> record does not show that defendant's consumption of alcohol before coming to court in any way caused delay or disruption of the hearing, which would constitute a contumacious obstruction of the administration of justice.

Id. at 537 (citations omitted).

In a similar circumstance, a trial judge in Maryland convicted a defendant of criminal contempt because he had "a strong odor of alcohol" and a .20 reading on a passive breath test. Cameron v. State, 650 A.2d 1376, 1378-79 (Md. Ct. Spec. App. 1994). Reversing that ruling, the appeals court held that the evidence failed to prove the accused's "behavior . . . was . . . contemptuous on its face." Id. at 1381. The court held that the evidence was insufficient to support the conviction because no evidence proved the accused was "disruptive of the proceeding" or "rebellious, . . . insubordinate, . . . willfully disobedient or openly disrespectful." Id. In other words, the defendant's conduct did not obstruct the court in the discharge of its duties.

These decisions are more persuasive than the decision of the Arkansas Supreme Court which expressly declined to address the appellant's contention "that his behavior did not fall within any of the five categories listed in [Ark. Code Ann.] § 16-10-108(a)," the Arkansas summary contempt statute. Burradell v. State, 931 S.W.2d 100, 102 (Ark. 1996). Upholding the conviction for criminal contempt, the Supreme Court of Arkansas declined to apply its statute and held that Arkansas courts have the inherent power to punish any "behavior[, which], standing alone, [is] a mark of disrespect to the court and the legal process." Id. at 102. The court found cases from other states "distinguishable, although they involve similar fact situations," because Arkansas "empowered . . . judges with greater authority to preserve and protect the dignity of their courtrooms." Id. at 103. The court specifically distinguished its power from other jurisdictions where, for example, the "law required 'misbehavior . . . obstructing the administration of justice' before a contempt citation could be issued," id. (quoting Di Giacinto,

- 15 -

471 A.2d at 536), or "a charge of contempt could only be supported by a willful attempt to show disrespect," id. (citing Bethard v. District of Columbia, 650 A.2d 651, 653 (D.C. 1994)).  Unlike Arkansas, our Supreme Court long ago held that our summary contempt statute is a declaration of Virginia's public policy and that courts must apply the statute in determining whether the behavior at issue is punishable as summary contempt.  Weston, 195 Va. at 182-84, 77 S.E.2d at 408-09.  See Yoder v. Commonwealth, 107 Va. 823, 57 S.E. 581 (1907) (reversing a conviction for summary contempt where the trial judge failed to adhere to the provisions of the summary contempt statute); see also Holt v. Virginia, 381 U.S. 131 (1965) (reversing a conviction for summary contempt under Code § 18.1-292(1), the predecessor to Code § 18.2-456(1)).

In this case, the judge convicted Rozario of summary contempt under Code § 18.2-456 for "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice."  The summary contempt statute undoubtedly authorizes judges to protect against actual obstructions in the courtroom.  I would reiterate, however, an observation we made in Carter:

> We do not here lose sight of the fact that frequently a reading of the cold record does not accurately portray the actual conduct of the parties, their witnesses or their counsel.  For that reason it is of utmost importance that as near as possible the record recites the facts or contains the evidence to support the conclusions of the trial court.  See Harvey v. Commonwealth, 209 Va. 433, 436-37, 164 S.E.2d 636, 638 (1968) (showing the need for the record to prove guilt).

2 Va. App. at 399, 345 S.E.2d at 9-10.

The record here discloses no physical impairment attributed to Rozario that delayed, interrupted, or obstructed the court proceeding.  The district court judge's decision to cause a deputy sheriff to test Rozario for alcohol was not based on an interruption of the court proceeding or shown to be caused by anything other than his bloodshot eyes and body odor suggesting consumption of alcohol.  The "Statement of Facts" provided no indication of the

- 16 -

manner in which Rozario interrupted the proceedings or lacked capacity to rationally respond in the courtroom. Without some indicia of proof of the manner in which Rozario's conduct was detrimental to the proceeding or obstructed the administration of justice, the evidence was insufficient to prove the elements of contempt.[5] See id. (holding that the record failed to contain facts sufficient to support the conviction for criminal contempt).

V.

For all of these reasons, I would hold the evidence was insufficient to support a conviction for summary contempt. Therefore, I would reverse the conviction and dismiss this prosecution.

---

[5] The Commonwealth argues Rozario "caused the *court* to interrupt the proceedings to determine if the court's conclusion that Rozario was intoxicated was correct." (Emphasis added.) This assumes a fact that precisely exposes the evidentiary deficiency in this case. Nothing Rozario said or did caused an interruption. At some time before arriving in court, Rozario consumed alcohol, a lawful substance. The judge's desire to quantify the level of alcohol in Rozario's body cannot be the basis for the claimed contemptuous behavior when the record failed to prove Rozario, himself, did anything to cause an interruption or delay. See e.g., United States v. Snider, 502 F.2d 645, 658 (4th Cir. 1974) (holding that the defendants' failure to rise from their seats and stand, "accompanied only by such interruption of proceedings as are thought necessary by the district judge to explain the consequences of contempt and cite the alleged contemnor for his actions," was not "misbehavior" that would support a finding of contempt).

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **13th** *day of* **February, 2007**.

Anselmo M. Rozario,                                                                                                                    Appellant,

against          Record No. 1433-05-2
                 Circuit Court No. CR05M00632-01

Commonwealth of Virginia,                                                                                                    Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On November 28, 2006 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on November 14, 2006, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on November 14, 2006 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:   Judges Benton, Clements and Beales
Argued at Richmond, Virginia

ANSELMO M. ROZARIO

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1433-05-2                      JUDGE JAMES W. BENTON, JR.
                                                         NOVEMBER 14, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

John L. Squires (Nachman & Squires LLP, on brief), for appellant.

Josephine F. Whalen, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


A judge of the general district court convicted Anselmo M. Rozario of summary contempt

of court.  Rozario contends the circuit court judge erred in ruling that (1) the general district court

judge properly relied upon the results of an Alcosensor testing device and (2) the evidence was

sufficient to prove an act of contempt.  We hold the evidence was insufficient to prove contempt

beyond a reasonable doubt.

I.

Anselmo M. Rozario appealed to the circuit court from an order entered in the general

district court convicting him of summary contempt and imposing a sentence of ten days in jail.  See

Code §§ 18.2-428 and 18.2-459 (authorizing district court judges to punish contempt and providing

that such convictions can be appealed to circuit court).  In the circuit court, the prosecutor offered as

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence a certificate of the conviction prepared by the district court judge pursuant to Code

§ 18.2-459.  The certificate reads as follows:

Statement of Facts

On February 7, 2005[,] while holding traffic court, I noticed Mr. Anselmo Rozario when he appeared in front of me with bloodshot eyes and an odor of alcohol about him.  I had my deputy test him and the reading was .10.  I then gave him ten days in jail for summary contempt of court.

The prosecutor offered no other evidence in his case-in-chief.

In a motion to strike, Rozario's attorney argued the alcohol test result was inadmissible

because it was obtained from an Alcosensor device, and he contended the evidence failed to

establish Rozario obstructed the administration of justice.  Specifically noting that "nothing in

this certificate . . . says anything [about an Alcosensor]," the circuit court judge overruled the

motion to strike the evidence.  Rozario's attorney then offered as evidence a copy of the

"Alcosensor Worksheet" the general district court judge relied upon in finding "the reading was

.10."  Rozario's attorney offered no other evidence, rested his case, and renewed his motion to

strike.

The circuit court judge ruled that the result of the Alcosensor test was admissible and that

the facts in the certificate were sufficient to prove contempt under Code § 18.2-456.

II.

On brief, Rozario presents the following matters for our consideration in this appeal:

ASSIGNMENT OF ERROR

1.  The Circuit Court of Chesterfield County improperly convicted Appellant of summary contempt of court because the evidence introduced by the Commonwealth at trial was legally insufficient to support a conviction pursuant to [Code] § 18.2-456.

> 1. Did Judge Laney, in General District Court, and Judge Gill, in Circuit Court, improperly rely on the results of a chemical test for blood alcohol content in finding that Rozario was intoxicated in Judge Laney's court on February 7, 2005?
>
> 2. In the absence of evidence of the results of the chemical test for blood alcohol content, was the information contained in Judge Laney's Statement of Facts sufficient to support the Circuit Court's finding of guilt?

Rozario's petition for appeal contained only the two questions presented and did not reference an "assignment of error." The Rules of Court provide that "[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals." Rule 5A:12(C). For these reasons, we limit our review to the issues fairly presented in the two questions presented, which were raised in the petition for appeal and accepted for review. See Selph v. Commonwealth, 48 Va. App. 426, 434, 632 S.E.2d 24, 28 (2006) (holding that our consideration of an "assignment of error" was barred because it was not presented in the petition).[1]

### III.

Before commencing the analysis of the substantive issues raised on appeal, we address the suggestion that Rozario invited the errors that he now complains of by introducing the Alcosensor Worksheet into evidence.

---

[1] We note that this Court has not always been consistent in differentiating between "questions presented" and "assignments of error." In numerous appeals, we have recognized and addressed issues presented by "assignments of error" when properly raised. See, e.g. Black v. Powers, 48 Va. App. 113, 126, 628 S.E.2d 546, 553 (2006); Singson v. Commonwealth, 46 Va. App. 724, 732, 621 S.E.2d 682, 685 (2005); Aldridge v. Commonwealth, 44 Va. App. 618, 637, 606 S.E.2d 539, 548 (2004); Nowlin v. Commonwealth, 40 Va. App. 327, 333 n.1, 579 S.E.2d 367, 370 n.1 (2003); Riner v. Commonwealth, 40 Va. App. 440, 452, 579 S.E.2d 671, 677 (2003); Cuffee-Smith v. Commonwealth, 39 Va. App. 476, 479, 574 S.E.2d 294, 295 (2002); Allen v. Commonwealth, 36 Va. App. 334, 337-38, 549 S.E.2d 652, 653 (2001); Jones v. Commonwealth, 32 Va. App. 30, 37, 526 S.E.2d 281, 284 (2000).

Rozario argued at trial, as he does now, that the district court judge improperly relied upon an Alcosensor test result to determine Rozario's blood alcohol content. When Rozario's attorney first made this argument in circuit court, the circuit court judge had no basis to know from the prosecutor's evidence the source of the district court judge's finding because the record was silent as to the basis for the judge's factual finding. As his sole evidence in the circuit court, the prosecutor relied on the general district court judge's certificate of conviction, which alleged "the particular circumstances of the offense" in accordance with Code § 18.2-459. The certificate tersely recited that the district court judge "had [a] deputy test [Rozario] and the reading was .10." Thus, the circuit court judge said, "[T]here is nothing in this certificate that says anything [about an Alcosensor test], . . . . it just says . . . he took a test and the reading was .10."

At trial, the prosecutor did not dispute that the district court judge had based the certificate's recitation of facts upon the result of an Alcosensor test. Although the district court's file contained the "Alcosensor IV Worksheet," the prosecutor simply opted not to present it as evidence. When Rozario's attorney proffered the Alcosensor Worksheet, he expressly argued it was the basis for the district court judge's finding and said the judge improperly used it at the summary contempt proceeding.

"While the doctrine of invited error remains good law, it simply has no application where, as here, the record shows that a party clearly objected to a specific ruling of the trial court to which error is assigned on appeal." King v. Commonwealth, 264 Va. 576, 581-582, 570 S.E.2d 863, 866 (2002) (citing Wright v. Norfolk & W. Ry. Co., 245 Va. 160, 170, 427 S.E.2d 724, 729 (1993)). "In order for a procedural waiver to apply, the record must show that a litigant invited a trial court to commit error, either by failing to object or by agreeing to the ruling." State Farm Mut. Auto. Ins. Co. v. Kendrick, 254 Va. 206, 208 n.2, 491 S.E.2d 286, 287 n.2

(1997). Waiver does not apply, when, as in this case, the circuit court judge was fully aware of the objection. Id. The error to which Rozario objected was the district court judge's reliance upon an Alcosensor testing device to establish Rozario's blood alcohol content. By offering the worksheet as an exhibit, Rozario's attorney proffered the underlying support for the finding and, thus, provided proof to support this claim of error. Merely proffering for the record a document that represents a judge's prior ruling does not constitute invited error when the party has made her objection clear. See WJA-TV v. Levin, 264 Va. 140, 159, 564 S.E.2d 383, 395 (2002) (holding that by "merely proffering or agreeing to an instruction consistent with the trial court's prior ruling," a party does not waive its objection to that ruling). Significantly, the Commonwealth has not argued that Rozario has waived the issue.

If Rozario's attorney had not placed the Alcosensor Worksheet into the record, this appeal would likely be subject to dismissal for failure to provide this Court with a complete record to decide the claim of error. See LeMond v. McElroy, 239 Va. 515, 521, 391 S.E.2d 309, 312 (1990) (holding that "the responsibility for presenting an adequate appellate record is upon the appellant who seeks reversal of the decision below"); Ferguson v. Commonwealth, 10 Va. App. 189, 194, 390 S.E.2d 782, 785, aff'd in part, rev'd in part on other grounds, 240 Va. ix, 396 S.E.2d 675 (1990) (holding that "an appellant has the primary responsibility of ensuring that a complete record is furnished to an appellate court so that the errors assigned may be decided properly"). In other words, if Rozario's attorney had not proffered the Alcosensor Worksheet, he would have been precluded from asserting on this appeal that the ".10" recited in the certificate was the reported result of an Alcosensor device. By placing in the record the factual predicate that underlay the district court judge's conclusory finding that the "test . . . reading was .10," Rozario's attorney properly made a record to support the claim that the district court judge relied

upon an improper testing device.  For these reasons, Rozario is not procedurally barred from raising his questions presented on appeal.

IV.

Supposing that the judge erred in relying upon the results of the Alcosensor test, Rozario contends the evidence was insufficient to prove summary contempt.[2]  Fairly understood, he contends the evidence was insufficient in any event because he argues that "even if [the Alcosensor results] were properly admitted, . . . there is no evidence in the record . . . to sustain a conviction for . . . 'misbehavior in the presence of the Court, or so near thereto as to obstruct or interrupt the administration of justice.'"  (Quoting Code § 18.2-456(1)).  The Commonwealth contends the evidence was sufficient to prove contempt because Rozario's court appearance while under the influence of alcohol caused the judge "to stop the proceeding for the administration of an Alcosensor test to confirm the presence of alcohol."

In pertinent part, Code § 18.2-456 provides that a judge may punish a person summarily for contempt involving "[m]isbehavior in the presence of the Court, or so near thereto as to obstruct or interrupt the administration of justice."  Reversing a conviction for summary contempt, the Supreme Court of the United States held that before a judge may invoke "the drastic procedures of the summary contempt power . . .[,] there must be an actual obstruction of

---

[2] In the view we take of the case, we need not address Rozario's first issue on appeal. For purposes of reviewing the sufficiency of the evidence, we assume without deciding that the result of the Alcosensor test was admissible.  We disagree with the dissent's contention that Rozario's second question presented relies on him prevailing under the first question.  Rozario fairly raised the question of the sufficiency of the evidence independent of the question on the use of the Alcosensor test results.  Petitions for appeal "ought to assign clearly and distinctly all the errors relied on for a reversal of the case, so that the opposite party may know what questions are to be raised in the appellate court."  Orr v. Pennington, 93 Va. 268, 269-70, 24 S.E. 928, 928 (1896); see also Kirby v. Commonwealth, 264 Va. 440, 444-45, 570 S.E.2d 832, 834 (2002) (stating that the purpose of assignments of error is to direct opposing counsel and the court to the issues that the appellant claims as error).  Supporting our understanding of the second question presented is the Commonwealth's brief, which addressed the sufficiency issue as an issue independent from that of the Alcosensor test results.

justice." In re McConnell, 370 U.S. 230, 234 (1962); see also Salyer v. Commonwealth, 209 Va. 662, 664, 166 S.E.2d 110, 111-12 (1969) (holding that the evidence must prove "a clear and present danger to the administration of justice"). Thus, inappropriate or ill-mannered conduct that does not "obstruct or interrupt the administration of justice" is not misbehavior that can be punished.

> The record in such cases must contain more than the bare *conclusion* that the defendant's conduct was insolent, insulting, boisterous or the like. The actual facts upon which the court based its final conclusion must be set out. Such *conclusions* alone will not support a criminal contempt adjudication.

Carter v. Commonwealth, 2 Va. App. 392, 397, 345 S.E.2d 5, 8 (1986) (citations omitted). Because summary contempt "is a proceeding 'to preserve the power and vindicate the dignity of the court,' it is criminal and punitive in character, and the guilt of the alleged contemner must be established beyond a reasonable doubt." Weston v. Commonwealth, 195 Va. 175, 184, 77 S.E.2d 405, 410 (1953) (quoting Local 333B, United Marine Div. of Int'l Longshoremen's Ass'n v. Commonwealth, 193 Va. 773, 779, 71 S.E.2d 159, 163 (1952)).

Although the evidence was sufficient to prove that Rozario consumed alcohol at some time before appearing in the general district court, to establish an actual obstruction of justice, the evidence must prove more than an odor of alcohol emanating from a person's body and bloodshot eyes. This evidence proved nothing about Rozario's conduct, speech, or mannerisms in the courtroom and was insufficient to prove Rozario obstructed or interrupted justice. Likewise, evidence that his blood alcohol level was ".10" was not, when added to the judge's observations, proof of intoxication because it did not prove that Rozario had consumed a sufficient amount of alcohol to affect his speech, disposition, manner, movements, or behavior.

See Code § 4.1-100 (defining intoxication, for purposes of the Alcoholic Beverage Control Act, as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, speech, muscular movement, general appearance or behavior"). Indeed, in the circuit court, the prosecutor "concede[d] the evidence in this case would be insufficient to convict [Rozario] of being drunk in public." See, e.g., United States v. Brown, 401 F.3d 588, 597 (4th Cir. 2005) (noting that the court's "research has uncovered, and the Government has cited, no published opinion of the Virginia appellate courts finding probable cause for public intoxication based solely on glassy, bloodshot eyes and the strong smell of alcohol").

The provision of Virginia's contempt statute which was employed in this case is similar to the Pennsylvania statute at issue in Commonwealth ex rel. Falwell v. Di Giacinto, 471 A.2d 533 (Pa. Super. 1984), where the court reversed a criminal contempt conviction under circumstances analogous to this case. When the defendant appeared in court after having consumed four beers and having a strong smell of alcohol, id. at 534-35, the trial judge convicted him of summary contempt for "misbehavior . . . in the presence of the court, thereby obstructing the administration of justice." Id. at 536 (quoting 42 Pa. Cons. Stat. § 4131, renumbered to 42 Pa. Cons. Stat. § 4132). Reversing the conviction, the appeals court held as follows:

> [M]erely being under some influence of liquor will not by itself constitute contempt. The drunkenness must be such that it obstructs the administration of justice, which means that it must interfere with or disrupt the orderly process of the court. . . . The record does not show that defendant's consumption of alcohol before coming to court in any way caused delay or disruption of the hearing, which would constitute a contumacious obstruction of the administration of justice.

Di Giacinto, 471 A.2d at 537 (citations omitted).

In a similar circumstance, a trial judge in Cameron v. State, 650 A.2d 1376, 1378-79 (Ct. Spec. App. Md. 1994), convicted a defendant of criminal contempt because he had "a strong odor of alcohol" and a .20 reading on a passive breath test. Reversing that ruling, the appeals

court held that the evidence failed to prove the accused's "behavior . . . was . . . contemptuous on its face." Id. at 1381. The Court held that the evidence was insufficient to support the conviction because no evidence proved the accused was "disruptive of the proceeding" or "rebellious, . . . insubordinate, . . . willfully disobedient or openly disrespectful." Id. In other words, Cameron's conduct did not obstruct the court in the discharge of its duties.

We believe these decisions are more persuasive than the decision of the Arkansas Supreme Court which expressly declined to address the appellant's contention "that his behavior did not fall within any of the five categories listed in [Ark. Code Ann.] § 16-10-108(a)," the Arkansas summary contempt statute. Burradell v. State, 931 S.W.2d 100, 102 (Ark. 1996). Upholding the conviction for criminal contempt, the Supreme Court of Arkansas declined to apply its statute and held that Arkansas courts have the inherent power to punish any "behavior[, which], standing alone, [is] a mark of disrespect to the court and the legal process." Id. at 102. The court found cases from other states "distinguishable, although they involve similar fact situations," because Arkansas "empowered . . . judges with greater authority to preserve and protect the dignity of their courtrooms." Id. at 103. The court specifically distinguished its power from other jurisdictions where, for example, the "law required 'misbehavior . . . obstructing the administration of justice' before a contempt citation could be issued," id. at 103 (quoting Di Giacinto, 471 A.2d at 536), or "a charge of contempt could only be support by a willful attempt to show disrespect." Burradell, 931 S.W.2d at 103 (citing Bethard v. District of Columbia, 650 A.2d 651, 653 (D.C. 1994)). Unlike Arkansas, our Supreme Court long ago held that our summary contempt statute is a declaration of Virginia's public policy and thus required consideration of whether the behavior at issue is punishable under the statute. Weston, 195 Va. at 182-84, 77 S.E.2d at 408-09.

In this case, the judge convicted Rozario of summary contempt under Code § 18.2-456 for "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." The summary contempt statute undoubtedly authorizes judges to protect against actual obstructions in the courtroom. We reiterate, however, an observation we made in Carter:

> We do not here lose sight of the fact that frequently a reading of the cold record does not accurately portray the actual conduct of the parties, their witnesses or their counsel. For that reason it is of utmost importance that as near as possible the record recites the facts or contains the evidence to support the conclusions of the trial court. See Harvey v. Commonwealth, 209 Va. 433, 436-37, 164 S.E.2d 636, 638 (1968) (showing the need for the record to prove guilt).

2 Va. App. at 399, 345 S.E.2d at 9-10.

The record here discloses no physical impairment attributed to Rozario that delayed, interrupted, or obstructed the court proceeding. The district court judge's decision to cause a deputy sheriff to test Rozario for alcohol was not based on an interruption of the court proceeding or shown to be caused by anything other than his bloodshot eyes and body odor. The findings of fact provided no indication of the manner in which Rozario interrupted the proceedings or lacked capacity to rationally respond in the courtroom. Without some indicia of proof of the manner in which Rozario's conduct was detrimental to the proceeding or obstructed the administration of justice, the evidence was insufficient to prove the elements of contempt. See id. (holding that the record failed to contain facts sufficient to support the conviction for criminal contempt).

V.

For these reasons, we hold the evidence was insufficient to support a conviction for summary contempt.

Reversed and dismissed.

- 10 -

Beales, J., dissenting.

I am concerned that the majority concludes that a defendant, who appears in court with bloodshot eyes, smelling of alcohol, and having a blood alcohol level (BAC) of .107, has not interrupted a court's proceedings and, therefore, is not guilty of contempt. I respectfully disagree.

I.

Appellant on brief presents two Questions Presented. First, he asks this Court to consider "Did [the judges in the general district and circuit courts] improperly rely on the results of a chemical test for blood alcohol content in finding that Rozario was intoxicated in [general district court] on February 7, 2005?"[3] Second, he asks, "*In the absence of evidence of the results of the chemical test for blood alcohol content*, was the information contained in [the court's] Statement of Facts sufficient to support the Circuit Court's finding of guilt?" (Emphasis added.) Appellant's second Question Presented thus seems to presume that, if the Alcosensor results were admissible, then the evidence was sufficient to support a contempt finding.

I believe the Alcosensor results were properly considered by the trial court. First, appellant effectively created the error of which he now complains. Appellant introduced the Alcosensor result sheet. He cannot ask for the admission of evidence and then complain when the trial court considers it. See Billips v. Commonwealth, 48 Va. App. 278, 295-96, 630 S.E.2d 340, 348-49 (2006) (discussing approbate and reprobate). Although the majority suggests a reason why appellant introduced this document into evidence, appellant did not present this

---

[3] As this Court does not review decisions of the general district court, we cannot address that aspect of the Question Presented. See Code §§ 16.1-131.1, 16.1-132, 17.1-405, 17.1-406.

explanation to the trial court nor did appellant place any limitation on the court's use of this evidence.[4]

Second, appellant did not object to the introduction of the certificate prepared by the general district court judge. That certificate includes the statement that the general district court "had [the] deputy test [appellant] and the reading was .10."[5] Appellant argued later that the trial court should not consider the breath test because such tests are not admissible generally[6] and, therefore, are not sufficient to prove guilt beyond a reasonable doubt. He never specifically asked the court to exclude the evidence of the Alcosensor test. See Rule 5A:18. As the trial court restated it, appellant's argument to that court was "whether or not the Alkosensor test is sufficient enough to establish drunkenness." Appellant argued this evidence should receive little weight, not that the results were inadmissible.[7] As appellant introduced the test results himself and did not object to the introduction of the certificate, he cannot argue on appeal that the evidence was inappropriately before the court.

---

[4] The majority also suggests that, without this certificate, the appeal would be dismissed for failure to provide a complete record. This suggestion assumes we are reviewing the general district court's decision, not the decision of the circuit court. If appellant had not presented the certificate to the trial court, then it would not be part of the record of the circuit court proceedings on appeal. Therefore, its exclusion would not seem to affect this appeal procedurally. In fact, appellant may have had a more persuasive substantive argument to the trial court and to this Court had the document never been presented.

[5] All parties implicitly agree that the test mentioned in the certificate from the general district court was an Alcosensor test for blood alcohol content.

[6] Code § 18.2-268.9 limits admissibility of breath-test results in prosecutions under §§ 18.2-266, -266.1, -272, and similar statutes. Code § 18.2-456 is not similar to these statutes.

[7] In his brief to the trial court after the guilt phase of the trial, appellant changed his argument. In this brief, appellant suggests that the breath-test results should have been excluded. Such an objection clearly was not made at the time the evidence was introduced, as required by Rule 5A:18.

Third, even if appellant had preserved the argument, as the majority concludes, I still find the trial court properly considered the Alcosensor test. Appellant basically argues that Code § 18.2-268.9 limits admissibility of breath-test results. However, the clear language of the statute limits the use of these results in prosecutions under §§ 18.2-266, -266.1, -272, and similar statutes. Appellant was found in contempt of court under Code § 18.2-456, which is not similar to the statutes listed in Code § 18.1-268.9. Those listed statutes refer to traffic offenses. As this case does not involve a traffic offense, the Alcosensor test was admissible. See, e.g., Hale v. Commonwealth, 23 Va. App. 587, 590-91, 478 S.E.2d 710, 711-12 (1996). The trial court did not abuse its discretion in admitting the evidence and determining the weight given to the test results. See James v. Commonwealth, 18 Va. App. 746, 754, 446 S.E.2d 900, 905 (1994).

Based on this conclusion that the Alcosensor test was properly considered, I would find appellant's sufficiency argument fails. As he frames the issues for consideration here, his sufficiency argument is premised upon a finding that the trial court should not have considered the Alcosensor test. The majority contends appellant raised this question independent of the sufficiency issue. However, as even the cases cited by the majority explain, the assignments of error and the questions presented determine the arguments on appeal to this Court, not the substance of the argument section. See supra majority opinion, fn. 2; see also Luginbyhl v. Commonwealth, 48 Va. App. 58, 63 n.3, 628 S.E.2d 74, 77 n.3 (2006) (*en banc*) ("[E]ven if the appellant had preserved this issue below, it was not a question presented in the petition for appeal as required by Rule 5A:12(c), nor was the issue briefed as required by Rule 5A:20."). The two issues granted on appeal here are intertwined, by the clear wording of appellant's filings. I do not believe we should look to the full argument to determine the "actual" issues

before this Court. Instead, we are bound by Rule 5A:12(c): "Only questions presented in the petition for appeal will be noticed by the Court of Appeals."[8]

## II.

If appellant's issue were framed as considered by the majority, I believe we should affirm the finding that appellant was in contempt of court when he decided to appear intoxicated before the general district court on his traffic charges. To find otherwise undermines respect for the solemnity of the Virginia courts.

The Virginia Supreme Court has explained that contempt occurs when events:

> probably will "affect the course of justice in future litigation and impair, if not destroy, the judicial efficiency of the court or judge subjected to attack." [Weston v. Commonwealth,] 195 Va. [175,] 184, 77 S.E.2d [405,] 409 [(1953)]. And the rationale of the rule is that "[the] dignity of the courts and the duty of the citizens to respect them are necessary adjuncts to the administration of justice." 195 Va. at 183, 77 S.E.2d at 409.

Salyer v. Commonwealth, 209 Va. 662, 664-65, 166 S.E.2d 110, 112 (1969); see United States v. Barnett, 376 U.S. 681, 700 (1964) (noting that contempt of court is an "insult[] offered to the authority of the people themselves"). This Court has explained:

> "'Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.'" Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986) (quoting 4A Michie's Jurisprudence Contempt § 2 (Repl. Vol. 1983)); see Code § 18.2-456(1). It includes any act "which is calculated to embarrass, hinder, or obstruct the court" in the discharge of its responsibilities. Carter, 2 Va. App. at 396, 345 S.E.2d at 7-8; Potts v. Commonwealth, 184 Va. 855, 859, 36 S.E.2d 529, 530 (1946).

---

[8] Whether or not the Commonwealth realized that appellant deviated from the Questions Presented is irrelevant to this analysis. As Rule 5A:12(c) clearly states, this Court *will not* consider a question that is not presented. We do not depend upon the opposing party to argue this point, but should address this problem *sua sponte* when it is discovered. See, e.g., Lee v. Lee, 12 Va. App. 512, 404 S.E.2d 736 (1991) (*en banc*) (in which the dissent notes that the majority reached the Rule 5A:18 issue *sua sponte*).

A district court judge has the power to punish summarily for contempt. Code § 18.2-458. It is a power "essential and inherent . . . [to] the very existence of our courts," Levine v. United States, 362 U.S. 610, 615 (1960), indispensable to "the proper administration of the law . . . [and necessary] to preserve the confidence and respect of the people without which the rights of the people cannot be maintained and enforced." Carter, 2 Va. App. at 395, 345 S.E.2d at 7 . . . .

Baugh v. Commonwealth, 14 Va. App. 368, 372, 417 S.E.2d 891, 894 (1992). Criminal contempt actions are designed to protect the power of the courts, to preserve their dignity, and to deter misbehavior. See Bessette v. W. B. Conkey Co., 194 U.S. 324, 327-28 (1904); Local 333B v. Commonwealth, 193 Va. 773, 779-80, 71 S.E.2d 159, 163-64 (1952); Robinson v. Commonwealth, 41 Va. App. 137, 142, 583 S.E.2d 60, 63 (2003); Morrissey v. Commonwealth, 16 Va. App. 172, 176-78, 428 S.E.2d 503, 505-06 (1993).

The majority finds the Commonwealth did not prove that appellant's misbehavior interrupted the proceedings in the general district court. I disagree. Appellant drank enough alcohol to give him bloodshot eyes and the smell of alcohol, obvious enough to draw the attention of the presiding judge. Appellant was appearing on several traffic offenses; he was not someone simply sitting in the courtroom. The judge found it necessary to stop the proceedings and ask the bailiff to administer an Alcosensor test to appellant. The test found appellant had a BAC of .107, more than two points over the legal limit for driving in the Commonwealth. See Code § 18.2-266. Whether or not he could be convicted of public intoxication under the Virginia Code, I believe the trial court had sufficient evidence to find appellant in contempt of court.

Under the majority's interpretation, a person may appear intoxicated before the court, and a judge cannot take action to enforce the solemnity of the proceedings unless the person affirmatively and independently interrupts the proceedings. According to this interpretation of the contempt power, a person has no responsibility for his lack of respect for the court and others

- 15 -

when his appearance effectively delays the docket.[9]  The majority cites In re McConnell, 370

U.S. 230 (1962), as supporting its position, but there the United States Supreme Court suggested

that misbehavior prompting a court to ask for assistance from a bailiff can constitute actual

obstruction.

> It is true that petitioner stated that counsel had a right to ask
> questions that the judge did not want asked and that "we propose to
> do so unless some bailiff stops us." The fact remains, however, that
> the bailiff never had to interrupt the trial by arresting petitioner, for
> the simple reason that after this statement petitioner never did ask
> any more questions along the line which the judge had forbidden.
> And we cannot agree that a mere statement by a lawyer of his
> intention to press his legal contention until the court has a bailiff
> stop him can amount to an obstruction of justice that can be
> punished under the limited powers of summary contempt which
> Congress has granted to the federal courts. The arguments of a
> lawyer in presenting his client's case strenuously and persistently
> cannot amount to a contempt of court so long as the lawyer does
> not in some way create an obstruction which blocks the judge in
> the performance of his judicial duty. The petitioner created no such
> obstacle here.

Id. at 236.  In re McConnell does not stand for the proposition that only those acts independently

halting proceedings are contemptuous.

The majority also relies on Carter v. Commonwealth, 2 Va. App. 392, 345 S.E.2d 5

(1986).  However, the facts of Carter differ significantly from this case.  Carter simply requested

a jury trial on the day that his case was set for a bench trial, and the trial court then, wrongly,

found him in contempt for failing to make the request earlier.  Id. at 394, 345 S.E.2d at 6.  This

Court discussed, in the context of finding someone in contempt for invoking a constitutional

right, that the record must contain some evidence of a willful intent to obstruct or interrupt the

administration of justice.  Id. at 397-99, 345 S.E.2d at 8-9.  As the request or waiver of a jury is

---

[9] The majority quotes Code § 4.1-100, "defining intoxication . . . as 'a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, speech, muscular movement, general appearance or behavior.'"  Appellant's general appearance, given his odor of alcohol and bloodshot eyes, would certainly seem to fall within this definition.

part of the normal proceedings of a trial, Carter's analysis is certainly reasonable.  However, appearing intoxicated before a court should not be part of the normal proceedings of a court nor should Alcosensor testing of defendants be considered normal.  As appellant chose to drink alcohol before coming to court and to appear with bloodshot eyes, smelling of alcohol, and with a BAC of .107, I would find his misbehavior was intentional and, indeed, willful.

I also respectfully disagree with the majority's interpretation of the contempt statute.  A person can be punished for "[m]isbehavior in the presence of the court, *or* so near thereto as to obstruct or interrupt the administration of justice."  Code § 18.2-456(1) (emphasis added).  If the activity is misbehavior, then the action need not actually obstruct or interrupt the administration of justice.  This section of the statute is written in the disjunctive, using the word "or." Therefore, a person can be punished for either misbehavior *or* obstructing or interrupting justice; both need not be proven.  Appearing in court intoxicated, especially when appearing as a defendant, is certainly misbehavior.  At the very least, a reasonable fact finder could have found that this evidence was sufficient to prove misbehavior or behavior that interrupted the administration of justice.  See Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).

The majority cites cases from Pennsylvania and Maryland as supporting its interpretation of Code § 18.2-456.  However, neither of these cases is particularly analogous to the situation before this Court.

In Commonwealth ex rel. Falwell v. Di Giacinto, 471 A.2d 533, 536-37 (Pa. Super. Ct. 1984), the Pennsylvania appellate court vacated a contempt conviction that was based on appellant's consumption of four beers prior to a civil noncompliance hearing.  The only apparent disruption in the proceedings was some slight incoherence, "which is a common phenomenon in hearing transcripts, whether the speaker is inebriated or not," according to that court.  Id. at 537.

- 17 -

As the quotation included in the majority opinion indicates, if the consumption of alcohol "*in any way caused delay or disruption* of the hearing," the Pennsylvania courts would have affirmed the contempt finding. Id. at 537 (emphasis added). Here, appellant's behavior and appearance did cause delay in the proceedings. The general district court stopped the proceedings to have the bailiff test appellant. With this additional factor, if this case were before the Pennsylvania court, I believe that court would affirm the contempt finding, even though their statute is more restrictive than our Code § 18.2-456.[10]

The majority also cites Cameron v. State, 650 A.2d 1376, 1380-82 (Md. Ct. Spec. App. 1994). In that case:

> [A]ppellant returned to court as scheduled and, pursuant to a plea agreement, entered a plea of guilty to driving under the influence. Before accepting the plea, the court questioned Cameron on his present sobriety, obtaining assurances from Cameron that he was not currently under the influence of alcohol. The court asked other questions of Cameron to determine whether he entered the plea voluntarily, understood all of his rights, and comprehended the consequences of his plea. Then, the court accepted the plea as "freely and intelligently made."
>
> \*   \*   \*   \*   \*   \*   \*
>
> Pursuant to the court's order, Cameron proceeded to the Health Department following the plea and sentencing proceeding. When Cameron appeared at the Department at approximately 10:20 a.m., the Supervisor for the Drinking Driver Monitor Program, Randall Blough, "detected a strong odor of alcohol." Mr. Blough proceeded to administer a passive breath test and a portable

---

[10] The Pennsylvania statute limits contempt to:

> (1) The official misconduct of the officers of such courts respectively.
> (1) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
> (1) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa. C.S. § 4132 (numbered § 4131 at the time Falwell was found in contempt).

- 18 -

breathalyzer test, the passive breath test yielding "a point two oh [sic]" reading. The parties then returned to court.

Id. at 1378-79. The Maryland court also noted that the trial court apparently found "Cameron was not too intoxicated to waive his testimonial rights," and added, "It is crucial to note that it is unclear whether Cameron was even intoxicated at the plea proceeding." Id. at 1381. Based on Maryland law, which requires a finding that the behavior was "contemptuous on its face or it must be shown that the person possessed contumacious intent," the appellant court overturned the contempt finding. Id. at 1380, 1382. This same decision upheld Cameron's guilty plea. Id. at 1384. The facts before the Maryland court differ greatly from the facts before this Court. Here, we know that appellant had a BAC of .107 while he was in court. His appearance and his aroma caused the general district court to stop its proceedings and ask the bailiff to test appellant. This behavior is contemptuous on its face under Virginia law.

I suggest that Virginia look to the Arkansas Supreme Court in Burradell v. State, 931 S.W.2d 100 (Ark. 1996), for guidance. In that case, "other than smelling of alcohol and registering a .13 on the breath test [customarily given before DWI defendants appear in court], Burradell displayed no outward signs of intoxication." Id. at 101. The Arkansas Supreme Court explained why it upheld the contempt finding:

> An act is contemptuous if it interferes with the order of the court's business or proceedings or reflects upon the court's integrity. The power of contempt is available to uphold public confidence in the majesty of the law and to preserve the power and dignity of the court. These interests are offended by a defendant who shows up for a plea hearing under the influence of alcohol. Public confidence in the majesty of the law would be sorely tried were a court to turn a blind eye to a defendant who appeared in court smelling of alcohol and intoxicated to the extent we have in this case. Further, the validity of the proceedings themselves could be called into question by the participation of an intoxicated defendant. Finally, we have recognized that one of the values of a court's exercise of its criminal contempt power is its deterrent effect on others. A contempt citation such as the one issued

- 19 -

against Burradell lets others know that such behavior will not be tolerated by the court.

Id. at 102 (citations omitted).

The majority distinguishes Burradell by pointing to the differences in states' contempt statutes. While the Arkansas court did not review the particular language of their contempt statute, they did define contempt as an act that "interferes with the order of the court's business or proceedings or reflects upon the court's integrity." Id. at 102. This definition is consistent with Virginia's statutory definition of contempt as including "misbehavior in the presence of the court, or as near thereto as to obstruct or interrupt the administration of justice,"[11] Code § 18.2-456, and with our courts' previous interpretations of contempt, see Salyer, 209 Va. at 664-65, 166 S.E.2d at 112; Baugh, 14 Va. App. at 372, 417 S.E.2d at 894. The Arkansas court, in reviewing Di Giacinto, also notes that the Pennsylvania statute requires "'misbehavior . . . obstructing the administration of justice.'" Burradell, 931 S.W.2d at 103 (ellipses in original). In contrast, the Virginia Code requires only "misbehavior," a less stringent requirement. See supra.

Here, we have an element that did not exist in Burradell -- the court found it necessary to interrupt the proceedings and determine appellant's level of intoxication before moving forward with his traffic cases. Although appellant himself did not verbally or physically interrupt the proceedings, he created a situation that impeded the normal course of the docket. The majority's interpretation of the contempt statute would permit people to appear in court after drinking enough alcohol to affect their appearance and not face any consequence for doing so. This

---

[11] The majority also cites Weston v. Commonwealth, 195 Va. 175, 182-87, 77 S.E.2d 405, 408-11 (1953), which affirmed a contempt citation for utterances regarding a judge's performance in an ended case, noting that, because Virginia had a statute defining contempt, the free speech concerns expressed in earlier cases were not as important to the Court's analysis. This case does eliminate the common law principles of contempt or make them irrelevant to interpreting the contempt statute.

- 20 -

interpretation undermines respect for the courts and impedes the administration of justice. It assumes that the administration of justice involves only the immediate, regular course of proceedings in the courtroom, to the exclusion of behavior that implicitly or explicitly shows disrespect and discourtesy to the court and to the citizens in that community.

The majority misinterprets Virginia's summary contempt statute. By allowing the misbehavior exhibited here to continue, this misinterpretation diminishes and impedes both the administration of justice and the respect of the public for the functioning of the courts. Therefore, I respectfully dissent.